## ACH & COMPANY *v.* MILAM *et al.*

1. Where a homestead was set apart under the constitution of 1868, and a mortgage on the homestead property was given in 1898, it was permissible for the defendant to set up the homestead in defense to an action to foreclose the mortgage.

2. Where the original petition for such a homestead showed that the legal title to the land sought to be set apart was in the wife, who made the application, evidence was admissible to show that, subsequently to the filing of the original petition, she conveyed the land to her husband and so amended her petition as to show that the title to the land was in him and pray that the homestead be set aside out of his property.

3. The defendant in an action to foreclose a mortgage by the terms of which the mortgagor waives all rights to homestead or exemption is not estopped by the recitals of the mortgage to deny the right of the mortgagee to sell the land covered thereby, under such a judgment as would deprive her of the use of the homestead property during her life.

Argued May 8, — Decided May 30, 1903.

Forelosure of mortgage. Before Judge Fite. Bartow superior court. January 14, 1903.

*John W. Akin,* for plaintiffs.
*Thomas W. Milner & Sons,* for defendants.

CANDLER, J. On the 4th day of August, 1898, Mrs. S. E. Milam, Ruby P. Milam, and Pearl L. Milam executed and delivered a promissory note to Samuel Ach & Co., for the principal sum of $1,486.-94. This instrument contained a waiver of all homestead and ex-

emption rights, and to secure its payment a mortgage was executed contemporaneously, and was duly recorded. The consideration expressed in the mortgage was the principal sum of the note, " and the better securing the payment of the aforesaid note." The language used in the conveying clause was, " do hereby sell and convey." This was followed by the usual habendum clause, with warranty of title. The mortgage also contained a clause waiving homestead and exemption rights, in the usual language, as well as a power of sale. The property described in the mortgage was a tract of land in Bartow county known as the W. P. Milam place. The plaintiffs below filed their petition in Bartow superior court, to foreclose this mortgage. Mrs. S. E. Milam filed an answer objecting to the foreclosure, in which she averred that the mortgage in question was upon property which had, by proper order of court and in conformity to law, been set apart to her and her minor children; and that while her children were of age at the time of the filing of her answer, she claimed the benefit of the estate so set apart to her during her life or widowhood, and asked that no decree selling the homestead property be granted as prayed. Her answer also set up that she is now the widow of W. P. Milam, deceased, and that the property embraced in the mortgage is the property set apart from the estate of the said W. P. Milam as a homestead for her benefit, and that the homestead estate is still of force, as she is unmarried and has never removed her citizenship or home from the State of Georgia. The mortgage appearing to have been executed in Alabama, and reciting that the defendants lived in that State, the answer further averred that while the defendant had visited her children in Alabama, she had never abandoned her residence in Georgia with a view to changing her citizenship, but has always regarded and now regards the homestead estate as her home. The plaintiffs, before the introduction of any evidence, demurred to Mrs. Milam's plea, on the grounds, (1) that no copy of the homestead referred to was annexed to the answer as an exhibit; and (2) that such homestead could not be set up against the plaintiffs as a defense to the proceeding instituted, the defendant being concluded from setting up the homestead by reason of the mortgage, the execution and delivery of which were admitted in another portion of the plea. This demurrer was overruled, and the plaintiffs excepted.

On the trial the plaintiffs introduced their note and mortgage,

and a warranty deed made by W. P. Milam to his wife, Mrs. S. E. Milam, conveying the property in dispute in fee simple. The date of this deed was December 22, 1874. They also introduced the following paper, dated August 31, 1895: "In consideration of Samuel Ach & Co. selling my daughter, Miss Ruby P. Milam, goods on time, I agree to become responsible to them for any goods she may buy, agreeing that if she does not pay for them within a reasonable time, I will, and hereby waive all homestead and exemption rights I may have under or by virtue of the constitution or laws of the State of Georgia or the United States. [Signed] Mrs. S. E. Milam." It also appeared that the consideration of the note which the mortgage was given to secure was goods sold by the plaintiffs to Ruby P. Milam. Mrs. S. E. Milam offered in evidence the record of a homestead, the material parts of which were as follows: The petition was by Mrs. Milam, and recited that she was the wife of W. P. Milam; that W. P. Milam was the head of a family consisting, besides the petitioner, of two minor children in addition to the defendants Ruby Milam and Pearl Milam; that W. P. Milam had declined to make application for a homestead, and that the application was therefore made by the wife, Mrs. S. E. Milam. The personalty described in the schedule was the property of W. P. Milam; the realty that of Mrs. S. E. Milam, under the deed which has already been mentioned. A schedule of personalty was attached, and also a schedule of realty, embracing the land described in the mortgage in this case. The usual affidavit, order to the county surveyor, plat, and return of the surveyor followed, after which appeared the following: "In re Sallie E. Milam, application for homestead. Court of Ordinary, Bartow County, Georgia. And now comes Sallie E. Milam and amends the application originally filed by her, and says that she has in terms of sec. 2018 Code Ga., 1873, relinquished and assigned and set over to her said husband all right, title, and interest she ever had in the lands described in her said original application as her separate estate. A copy of her deed of assignment is hereto attached as a part of this amendment. And now she prays that said land, as well as all of the other property set forth in her schedule heretofore filed, both real and personal, be set apart to her and her said family as a homestead under the laws in force in Georgia." This paper was dated February 27, 1875. This was followed on the record by a paper

signed by Sallie E. Milam and W. P. Milam, reciting that in consideration that the law requires that where a husband being the head of a family shall have no property of sufficient value out of which to set apart a homestead, and the wife has a separate property subject to her debts, she may relinquish, assign, or set over the same to her husband and then under the law apply to have same set apart as a homestead; that Sallie E. Milam has a separate estate in the lands mortgaged and known as the W. P. Milam place, which she "holds under a deed of gift from my husband, William P. Milam, dated 23rd December, 1874; and whereas I am now desirous of applying to the court of ordinary to have said lands set apart as a homestead under the laws of force in said State, I do hereby assign, relinquish, set over, and convey, upon the consideration above set forth, all my right, title, and interest in and to said land to my husband, William P. Milam. To have and to hold said land free from all claims whatever from myself or my heirs or assigns forever." This was signed and sealed in the presence of two witnesses, and was recorded in the office of the clerk of the superior court of Bartow county. The record showed an order of court overruling "the objections filed by the creditors of William P. Milam," and appointing appraisers to value the property. The appraisers made their return on March 18th, 1875. The following judgment of the ordinary appears also in the record, following the return of the appraisers of date March 19th, 1875: "The within schedule of personalty approved, and the plat as returned by the appraisers approved, and judgment for $18.30 costs rendered against the objectors." The record does not disclose who were the objectors, or the grounds of objection.

The plaintiffs objected to the introduction of all of the evidence for the defendant as above set out, on the grounds, (1) that the alleged homestead was void, in that it was set apart at the instance of a married woman not the head of a family, and out of her own property; (2) that the defendants were estopped, by the mortgage and its recitals and covenants, from attemping to set up the homestead as against the plaintiffs; and (3) that the defendants could not set up the alleged homestead, because the same was no defense to the judgment sought in this case, the "defendants' remedy, if any, being by claim to levy under execution issued from judgment in this case, or some other remedy not defensive to this suit." These

objections were overruled and the evidence admitted. It appeared from the evidence that W. P. Milam died in Georgia in 1891, intestate, and that no administration was had upon his estate. It further appeared that the youngest child of William P. and Sallie E. Milam was 26 years old when the mortgage was given, and that the daughters were all married It seems to have been admitted that Mrs. Milam had not abandoned her residence in Georgia (although there is no express declaration in the bill of exceptions to that effect), as nothing appears to indicate that there was any contention on this question. The plaintiffs, after all the evidence was in, moved the court to direct the jury to find for the plaintiffs against Mrs. S. E. Milam, and to find that the mortgage be foreclosed, and that the defendants were estopped to set up the homestead or to rely thereon. This the court refused to do, but on the other hand charged the jury that the homestead was valid, and that the mortgage was invalid except as to the interest in reversion of those heirs at law of William P. Milam who were parties to this case. The jury returned the following verdict: "We, the jury, find in favor of plaintiffs against Miss Ruby P. Milam as principal, and against Mrs. S. E. Milam and Miss Pearl F. Milam as securities, with homestead exempt; and further find in favor of foreclosure of mortgage on reversionary interest. Principal, $1,486.94, interest, $528.65, attorneys' fees, $149.69." The plaintiffs except to the overruling of their objections to the evidence for the defendants; to the charge of the court that the defendant Mrs. S. E. Milam could assert her homestead as a defense to this suit, and that the homestead was a valid homestead; to the holding that Mrs. S. E. Milam was not estopped by the mortgage from setting up her homestead; and to the direction to the jury to find in favor of Mrs. S. E. Milam to the extent of denying and refusing a foreclosure of the mortgage as against her homestead estate. Neither in the oral argument before this court nor in their briefs did counsel for the plaintiffs insist upon the first ground of their demurrer. The second ground goes to the substantial questions involved in the case, and the questions made by this ground of the demurrer are raised also by the objections to the admission of the evidence from the records of the ordinary's court; so that both may be treated together.

1. We are satisfied that Mrs. S. E. Milam had a right to object to the foreclosure of the mortgage on the homestead set apart to

her and her children, when the proceedings were instituted in the superior court. She did not object to a verdict and judgment against her on the note, and the jury found against all of the defendants for the full amount claimed thereon. She, being sui juris, and having been duly served with the petition asking for a judgment and for a foreclosure of the mortgage on the land and for an immediate sale thereof, such an adjudication would have settled not only the question as to the debt being due, but that the land in question was subject to sale for the then payment of same. The note which was the basis of the suit contained a full and explicit waiver of homestead, as did also the mortgage which the plaintiffs were seeking to foreclose; and if she had sat still and allowed a judgment to be taken as prayed, the plaintiffs might well have claimed, in any subsequent proceeding, that she was precluded. The Civil Code, § 2746, provides that when a rule nisi to foreclose a mortgage has been granted, the mortgagor may appear at the return term of the court and object to the foreclosure of such mortgage, and may not only set up and avail himself of any defense which he might lawfully set up in a suit instituted on a debt or demand secured by such mortgage, but may make any defense which goes to show that the applicant is not entitled to the foreclosure *sought.* Section 2750 provides that when the mortgagor, after being directed so to do, fails to pay the principal, interest, and costs, as required, and also fails to set up and sustain any defense against the foreclosure of the mortgage, the court shall give judgment for the amount due on the mortgage, and shall also order the mortgaged property to be sold. Mrs. Milam's defense was directed to the prevention of any order decreeing a sale of the homestead property, but did not seek to prevent a sale of the reversionary interests of the other defendants. While, in the determination of this case, it is unnecessary to decide whether or not the defendant might not, under some other proceeding, have prevented a sale of her interest in the homestead property, from other decisions of this court it is, to say the least, doubtful whether or not, if she had not at this time made a defense, she could ever have done so. See *Wegman Piano Co.* v. *Irvine,* 107 *Ga.* 65; *Bank of Forsyth* v. *Gammage,* 109 *Ga.* 220; *Evans* v. *Piedmont Nat. B. & L. Asso.,* 117 *Ga.* 940, and cit.

2. The original petition for a homestead filed by Mrs. Milam in the court of ordinary of Bartow county in behalf of herself and her

minor children showed that the legal title to the land which she sought to have set aside was in her, and not in her husband.   Prior to the order setting aside the homestead, however, she conveyed the land to her husband; and by an amendment to her petition she alleged that the title to the land was not in her, but in her husband, and attached to her amendment a copy of the conveyance to her husband.   There is no question that under the law as it then existed it was necessary for the title to be in her husband before the property could be set apart to her, or that it was necessary to the validity of the homestead that her petition should show that the title was in her husband.   *Jones* v. *Crumley*, 61 *Ga.* 105 ; *Coffee* v. *Adams*, 65 *Ga.* 347 ; *Bechtoldt* v. *Fain*, 71 *Ga.* 495 ; *Williams* v. *Webb*, 99 *Ga.* 301.   The Code of 1873, § 2018 (Acts 1870, p. 71), authorized the conveyance of the title to the land which was in the wife to the husband, in order that she might have it set apart to herself for the use of herself and her children as a homestead ; and the making of this deed to W. P. Milam by Mrs. S. E. Milam, and the amendment of her petition so as to show that fact, were proper as well as necessary ; and when the court of ordinary, over the objections of the creditors of the husband, set apart this homestead for the use of the widow and children, the question of the sufficiency of her petition was adjudicated.   By this judgment it was legally determined that she was entitled to have the land set apart to her ; and when the judgment so setting it apart, together with all the proceedings in connection therewith, was duly recorded as provided by law, the world was put on notice of its existence.

3.   The court below properly held that Mrs. Milam was not estopped by the mortgage to deny the right of the mortgagee to sell the land under such a judgment as would have deprived her of the use of the homestead property ; and it was accordingly not error to instruct the jury that the homestead estate could not be sold under the mortgage.   The judgment of the court of ordinary setting apart the homestead being in every respect regular, and being duly recorded, all presumptions were in favor of the validity of the homestead thus set apart.   It is true that this homestead was set apart under the constitution of 1868 ; but in the case of *Planters Bank* v. *Dickinson*, 83 *Ga.* 711, this court held that, since the adoption of the constitution of 1877, a homestead, though taken under the constitution of 1868, can not be mortgaged for any purpose, either by the

husband, or by the wife who applied for the homestead out of the husband's property, he having refused to apply. In the same case it was held that the wife, having made such a mortgage, is not estopped to deny its validity. The homestead in the present case having been recorded long before the credit was given for the goods for the payment for which the note and mortgage were given, the mortgagees were not such innocent parties as that the law will protect them rather than the beneficiary of the homestead. They knew, or ought to have known, when the first agreement was signed upon the faith of which they claim to have given the credit, that the land in question was exempt from levy and sale during the life and widowhood of Mrs. Milam, and that the constitution of this State forbade its being encumbered. See *Sharp* v. *Mortgage Co.*, 95 *Ga.* 415. In the argument before this court we were cited to the cases of *Lowe* v. *Webb*, 85 *Ga.* 731; *Miller* v. *Crozier*, 105 *Ga.* 54; *Stringfellow* v. *Stringfellow*, 112 *Ga.* 494; *Goodell* v. *Hall*, 112 Ga. 435. None of these cases are applicable to the case at bar, as each is clearly distinguishable from it on its facts. In each of the cases cited, the homestead estate was merged into a greater estate in the lands which had been set apart. In the case at bar, Mrs. Milam is still in possession under the exemption allowed her. She has no greater estate in it into which the homestead estate could be merged.

The jury, by direction of the court, found a verdict to the effect that the mortgage be foreclosed as to the reversionary interest of the defendants, and there is no reason, under this verdict, why execution should not issue and be levied upon these interests, whatever they may be, and the same sold as provided by law. Therefore nothing herein ruled is contrary to the decisions of this court in *Huntress* v. *Anderson*, 110 *Ga.* 427, and *Walker* v. *Hodges*, 113 *Ga.* 1042.          *Judgment affirmed. By five Justices.*